[No. 31660. Department One. September 4, 1951.]

*In the Matter of the Estates of* JOSEPH L. SIMS *and*
DOROTHY C. SIMS, *Deceased.*

JOSEPH RICHARD SIMS *et al., Respondents,* v. RICHARD
LINGREN *et al., Appellants.*[1]

[1]Reported in 235 P. (2d) 204.

*Clarence M. George, Howard Frissell,* and *William Lorenz,* for appellants.

*Harvey Erickson, Frank R. Freeman,* and *John J. Ripple,* for respondents.

HILL, J.—*Quare*: In the state of Washington, does a bequest and devise to one spouse contained in the will of the other lapse when the beneficiary predeceases the testator?

Joseph L. Sims died January 15, 1949, leaving his entire estate to his wife, Dorothy. She died April 16, 1949, leaving a will executed November 19, 1942, whereby she bequeathed and devised all her property to her husband, Joseph, with no residuary clause. Their estates were probated together.

Dorothy's heirs-at-law, a brother, half brother, and two half sisters, claim by virtue of the laws of descent and are the appellants here. Joseph's children by a former marriage claim that the devise and bequest to him did not lapse and that they are entitled to take as his heirs-at-law, and they are the respondents.

Our answer is that Joseph having predeceased Dorothy, the bequest and devise to him in her will lapsed, there being no applicable non-lapse statute changing the

common-law rule; and, since there was no residuary clause in her will, all of her property (which included all of the property in the Joseph Sims estate) passed by the law of descent to her heirs-at-law, the appellants here. (Our non-lapse statute applying to bequests and devises to *relatives* specifically excepts spouses from its operation, Rem. Supp. 1947, § 1404; and its predecessor, Rem. Rev. Stat., § 1404, which applied only to devises to relatives, had contained a similar exception.)

If that be not the law applicable to this situation, then lawyers, probate judges, title companies, and the tax commission have long been in grievous error.

But respondents urge that the devise to Joseph did not lapse, and that his heirs-at-law are entitled to have the entire estate of Dorothy distributed to them by virtue of Rem. Rev. Stat. (Sup.), § 1404-1 [P.P.C. § 199f-21] (Laws of 1937, chapter 151, § 1, p. 536), which reads as follows:

"Whenever any person having died leaving a will which has been admitted to probate, shall by said will have given, devised or bequeathed unto any person, a legacy or a devise upon the condition that said person survive him, *and not otherwise*, such legacy or devise shall lapse and fall into the residue of said estate to be distributed according to the residuary clause, if there be one, of said will, and if there be none then according to the laws of descent, unless said legatee or devisee, as the case may be, or his heirs, administrators, executors, or someone in behalf of such legatee or devisee, shall appear before the court which is administering said estate within seven years from and after the date the said will was admitted to probate, and prove to the satisfaction of the court that the said legatee or devisee, as the case may be, did in fact survive the testator: *Provided, however,* That in estates now in the course of probate, where the seven-year period above mentioned has already elapsed, such legatee or devisee, his heirs, administrators or executors shall have six months from and after the day this act takes effect to appear and offer proof that said legatee or devisee, as the case may be, did in fact survive the testator." (*Italics ours.*)

Appellants construe this section to have application only when a devise or bequest to an individual is conditioned on

his surviving the testator, and to mean that, in that event, the devise or bequest lapses if he predeceases the testator (but such devisee or legatee, his heirs or administrator has the right to come into court within seven years after the will is admitted to probate and offer proof that the devisee or legatee did in fact survive the testator).

Respondents, relying heavily on the words "and not otherwise," construe this section to mean that no devise or bequest can lapse except in those cases where the testator shall have conditioned the devise or bequest upon the devisee or legatee surviving the testator (and in that case such devisee or legatee, his heirs or administrator has the right to come into court within seven years after the will is admitted to probate and offer proof that the devisee or legatee did in fact survive the testator).

Respondents having persuaded the trial court that their interpretation of Rem. Rev. Stat. (Sup.), § 1404-1, is correct, the court entered an order November 1, 1950, vacating the decree of distribution entered October 4, 1950, by which it was ordered that the estate be distributed to the appellants, and granting a new trial, and thereupon entered a new decree of distribution which distributed the estate to the respondents. This appeal followed.

Respondents urge that, under the appellants' interpretation, Rem. Rev. Stat. (Sup.), § 1404-1, down to the word "unless," is but a restatement of the common law, and that it must be presumed that the legislature had something more in mind than a restatement of the common law.

To this there is a two-fold answer: First, the legislature has again and again placed common-law rules in statutory form; second, a study of the four sections of chapter 151 of the Laws of 1937 convinces us that that portion of § 1 (Rem. Rev. Stat. (Sup.), § 1404-1) on which respondents rely, is but laying the foundation for the things the legislature had in mind: (a) to insure that a genuine effort would be made to locate such devisees or legatees (Laws of 1937, chapter 151, § 4, p. 538, Rem. Rev. Stat. (Sup.), § 1404-4 [P.P.C. § 199f-27]); (b) to protect their interests if they were ab-

sentees within the meaning of chapter 39 of the Laws of 1915 (Laws of 1937, chapter 151, § 2, p. 537, Rem. Rev. Stat. (Sup.), § 1404-2 [P.P.C. § 199f-23]); (c) to make such legatees or devisees present evidence within seven years that they did survive the testator (Laws of 1937, chapter 151, § 1, p. 536, Rem. Rev. Stat. (Sup.), § 1404-1); (d) to give those who are anxious to have an estate distributed and closed, such as executors, residuary legatees or heirs-at-law, a procedure whereby, after seven years, that can be done (Laws of 1937, chapter 151, § 3, p. 537, Rem. Rev. Stat. (Sup.), § 1404-3 [P.P.C. § 199f-25]).

It seems to us that anyone considering this chapter of the law in its entirety must be convinced that the first portion of § 1 was not intended to be a non-lapse statute. It is in fact a lapse statute, not a non-lapse statute, and its title makes that very clear; it reads "AN ACT relating to certain legacies and devisees, and providing for the *lapse or distribution thereof.*" (Italics ours.) To construe this to be a general non-lapse statute would be to make it unconstitutional as a violation of Art. II, § 19, of the state constitution, which requires that the subject of the act shall be expressed in its title.

We have examined the non-lapse statutes of every state, and no state, with the exception of Maryland, has or ever had a non-lapse statute such as Rem. Rev. Stat. (Sup.), § 1404-1, would be if the respondents' interpretation were adopted. The usual requirement in non-lapse statutes that the person whose bequest or devise is not to lapse must be a descendant, or at least a relative of the testator, would be omitted, as would the other almost universal requirement that the person whose bequest or devise is not to lapse must leave issue or lineal descendants.

Under respondents' interpretation, § 1404-1 would, without any reference thereto, have superseded the non-lapse statute then in effect (Laws of 1917, chapter 156, § 34, p. 651, Rem. Rev. Stat., § 1404), which provided that there would be no lapse when any estate was devised to any child, grandchild or other relative of the testator, if said devisee should

die before the testator, having lineal descendants. It was therein specifically provided that a spouse was not a relative under that section.

Moreover, that interpretation would render totally unnecessary the 1947 amendment of Rem. Rev. Stat., § 1404 (now Rem. Supp. 1947, § 1404), the effect of which is to make that section applicable not only to a devise but to a bequest, so that it now reads:

"When any estate shall be devised or bequeathed to any child, grandchild, or other relative of the testator, and such devisee or legatee shall die before the testator, having lineal descendants, such descendants shall take the estate, real and personal, as such devisee or legatee would have done in case he had survived the testator. A spouse is not a relative under the provisions of this section."

Although we have not, as judges, been heretofore called upon to construe Rem. Rev. Stat. (Sup.), § 1404-1, we have, as practicing lawyers, read this section on numerous occasions, and the interpretation contended for by the respondents has never suggested itself to any of us. While ingenious, it is neither a reasonable nor a proper interpretation, and, considering the section either intrinsically or extrinsically, such an interpretation is not in accord with the intention and purpose of the legislature.

It is our view that Rem. Rev. Stat. (Sup.), § 1404-1, is not a non-lapse statute and has no application to the present case. As a spouse is specifically excepted from the statute in effect when the will was executed (Rem. Rev. Stat., § 1404), and from the statute in effect when the testator died (Rem. Supp. 1947, § 1404), neither statute can have any application here.

The answer to the question stated must be, as heretofore indicated, that the bequest to Joseph Sims in the will of Dorothy Sims lapsed. The result is that, in the absence of a residuary clause, the appellants, as the heirs-at-law of Dorothy, are entitled to have the estate distributed to them.

There are four assignments of error, each relating to some act of the trial court but all hinging on the same erroneous conclusion, that the legacy and devise to Joseph Sims did

not lapse and that his heirs are entitled to have the estate distributed to them.

We are not concerned with the mechanics by which the trial court achieves the end result, but, whether by reinstating the decree of distribution of October 4, 1950, or by changing certain sections of the decree of distribution of November 1, 1950, or by an entirely new decree of distribution, the trial court is directed to hold that the bequest of Joseph L. Sims did lapse, and to distribute the estate to the heirs-at-law of Dorothy C. Sims. The appellants will recover their costs from the respondents.

### Motion to Dismiss Appeal

A motion to dismiss this appeal was argued May 18, 1951, before Department No. 1. While the members of that department were agreed that it should be denied, it was thought that at least one of the questions raised was of sufficient importance to warrant an opinion. Before the opinion could be written, the appeal was heard on the merits, June 12, 1951, the same judges sitting, which makes it possible to dispose of both the motion to dismiss and the appeal on the merits in one opinion.

Ordinarily, and logically, we would dispose of a motion to dismiss an appeal before discussing the issues raised on the appeal, but it seemed to us that the background explanation necessary to an understanding of the points raised on the motion to dismiss could be secured and repetition avoided by reversing the usual order.

The motion to dismiss was based on three grounds: (1) The bond was prematurely filed and is defective in form and substance; (2) no notice of appeal was served upon the administrator; and (3) no supersedeas bond has been filed.

As heretofore indicated, the trial court had, October 4, 1950, entered a decree of distribution awarding the estate of Dorothy Sims to her heirs, appellants here. After further argument, the trial court announced, October 23, 1950, that it was granting a new trial, and directed the preparation of a decree of distribution awarding the estate to the respondents, heirs-at-law of Joseph Sims. The formal order vacat-

ing the decree of distribution of October 4, 1950, and granting a new trial, and the new decree of distribution, were not signed or filed until November 1, 1950.

The bond was filed October 24th, after the trial court had announced what it intended to do and several days before the orders appealed from were formally entered.

Rem. Rev. Stat., § 1721 [P.P.C. § 5-15], and not Rule 22 of the Rules on Appeal recently adopted (as assumed by the respondents), was controlling at the time this appeal was initiated. Section 1721 provides:

"An appeal in a civil action or proceeding shall become ineffectual for any purpose *unless at or before the time when the notice of appeal is given or served, or within five days thereafter,* an appeal bond to the adverse party conditioned for the payment of costs and damages as prescribed in section 1722, be filed with the clerk of the superior court, or money in the sum of two hundred dollars be deposited with the clerk in lieu thereof. . . ." (Italics ours.)

In *Singer v. Metz Co.,* 101 Wash. 67, 171 Pac. 1032, we said:

"The statute requiring an appeal bond, it will be noticed, permits it to be filed before the time when the notice of appeal is given or served *and contains no limitation upon the extent of such antecedent period of time.*" (Italics ours.)

The respondents ask us to read into the statute a clause to the effect that the bond cannot be filed prior to the entry of the judgment or decree appealed from. We see no reason to do so. It seems to us that under this statute a party might deposit two hundred dollars as a cash appeal bond at the time he files his first appearance in the case. The filing of the bond October 24, 1950, was not premature.

The bond stated that the appellants were appealing from the oral decision of October 23, 1950, granting a motion for a new trial and directing the filing of a "Decree of Distribution naming the respondents as the sole heirs and legatees of the Estates of Joseph L. Sims and Dorothy C. Sims, and the only persons entitled to share therein." It also referred to the fact that a notice of appeal had been given.

295

296

The notice of appeal there referred to was an oral notice given in open court October 23, 1950, when the trial court announced its ultimate decision. Formal written notice of appeal was thereafter served on respondents November 6, 1950, and filed November 8, 1950, and an amended notice of appeal was served on respondents November 8, 1950, and filed November 9, 1950.

The bond was inaccurate in its designation of what was appealed from and in its recital relative to the notice of appeal.

■ In view of the fact that the two-hundred-dollar cash bond on appeal, which is permissible, requires no conditions or recitals, and the fact that surety companies understand the statutory conditions which a bond for costs on an appeal is intended to meet, it is not surprising that both the legislature and this court have gone to great lengths to make clear that appeals should not and will not be dismissed because of defects in or insufficiency of appeal bonds, where such defects or insufficiencies are merely formal or can be remedied. See Rem. Rev. Stat., §§ 1730-9, 1734, and 777 [P.P.C. §§ 5-19, -61, 19-5]; *Westland Publishing Co. v. Royal*, 36 Wash. 399, 78 Pac. 1096.

The bond in question is conditioned that, if the principals (the appellants) do not pay to the respondents "all costs and damages that may be awarded against them on the appeal, or on the dismissal thereof, not exceeding the sum of Two Hundred Dollars," then the surety company will.

■ We find no requirement in Rem. Rev. Stat., §§ 1721 and 1722, that the specific orders appealed from shall be set forth in the bond or that it shall make reference to the notice of appeal; in fact, as we have seen, the bond may be given before that notice.

■ It is our view that the bond meets the statutory requirements. It was intended to protect the respondents from payment of the costs of an unsuccessful appeal and is sufficient for that purpose; and, if it were not, the defects in the recitals could be easily remedied. There is here no such defect in the bond as would warrant a dismissal of the appeal.

■ The second and third grounds for dismissal of the appeal can be disposed of quickly. The administrator with the wills annexed (Washington Trust Company) of the estates of Joseph L. and Dorothy C. Sims made it clear throughout the proceeding that it is only a stakeholder and is absolutely neutral as between the appellants and the respondents. Its interests could not be adversely affected by the decision of this court on the appeal, and, consequently, it was not necessary to serve it with a notice of appeal. *Coleman v. Wisbey,* 37 Wn. (2d) 737, 225 P. (2d) 1067.

■ An appellant is under no obligation to supersede a judgment or a decree appealed from. It is a right and a privilege granted, in certain cases under certain conditions, to preserve the fruits of his appeal if he prevails, but it is not something he is obligated to do. *Ryan v. Plath,* 18 Wn. (2d) 839, 855, 856, 140 P. (2d) 968.

The motion to dismiss the appeal is denied.

SCHWELLENBACH, C. J., BEALS, DONWORTH, and FINLEY, JJ., concur.